MELLON SERVICE COMPANY and Patricia Ann Love, Individually and as Trustee of the Don O. Love Qualified Term Interest Trust, Appellants,

v.

TOUCHE ROSS & CO., Appellee.

No. 14–96–00129–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 1, 1997.

---

Robert M. Corn, Houston, for appellants.

M. Byron Wilder, Dallas, for appellee.

Before AMIDEI, FOWLER and EDELMAN, JJ.

## OPINION

FOWLER, Justice.

In this appeal we must decide whether a visiting district judge, duly appointed to hear a case in the 333rd District Court in Houston, Harris County, Texas had the authority to hold a summary judgment hearing and grant a motion to allow a late-filed affidavit in the case while he was sitting in Galveston County for another district court. Because we conclude that the summary judgment hearing was a "proceeding" as described by article V, section 7 of the Texas Constitution, the trial court had no jurisdiction to hold the hearing at any locale other than the county seat of the county in which the case was pending. Therefore, the summary judgment he entered, which was based on the proceedings held in Galveston County is void, and we must dismiss the appeal for want of jurisdiction.

## THE MOTION TO VACATE

Mellon Service Company and Patricia Ann Love, individually and as trustee of the Don O. Love Qualified Term Interest Trust, (collectively "Mellon"), appellants, appeal from partial summary judgments granted in favor of Touche Ross & Co. ("Touche Ross"), appellee, by the trial court in this shareholder derivative suit. Mellon filed a motion during the pendency of the appeal asking this court to vacate the trial court's judgment and dis-

miss the appeal for want of jurisdiction. Because the visiting judge held the summary judgment hearing in Galveston County, Mellon contends he violated article V, section 7 of the Texas Constitution which requires district judges to conduct proceedings at the county seat of the county in which a case is pending. TEX. CONST. ART. V, § 7. According to Mellon, the court had no jurisdiction over the case at the time of the hearing because he violated the geographical mandate of article V, section 7, and therefore, the judgment was void. We agree.

## THE VALIDITY OF THE AFFIDAVITS

■ Attached to Mellon's motion to vacate and dismiss were affidavits setting out the facts concerning the appointment of the visiting judge to hear the case and the events surrounding the summary judgment hearing. Touche Ross asks us to strike them, arguing that an appellate court may not consider affidavits to determine the jurisdiction of the trial court. *See Eubanks v. Hand,* 578 S.W.2d 515, 516 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (citing *Rosenfeld v. Steelman,* 405 S.W.2d 301 (Tex.1966)). We do not dispute this legal proposition. In this case, however, the affidavits are necessary to determine *this* court's jurisdiction. If the trial court violated the mandatory provisions of article V, section 7 of the Texas Constitution, its judgment is void. *See Howell v. Mauzy,* 899 S.W.2d 690, 700 (Tex. App.—Austin 1994, writ denied). An appellate court has no jurisdiction to consider the merits of an appeal from a void judgment.[1] *Eubanks,* 578 S.W.2d at 517. In such an instance the appellate court must set aside the trial court's judgment and dismiss the appeal. *Id.* Mellon's affidavits relate the factual circumstances surrounding the summary judgment hearing and entry of judgment.

Under rule 19(d), motions, dependent on facts not apparent in the record, must be supported by affidavits or other satisfactory evidence. *O'Connor v. Sam Houston Medical Hosp., Inc.,* 802 S.W.2d 247, 250 (Tex.

App.—Houston [1st Dist.] 1990), *rev'd on other grounds,* 807 S.W.2d 574 (Tex.1991); TEX.R.APP.PROC. 19(d). Other courts are in accord. *See, e.g., Aycock v. Pannill,* 853 S.W.2d 161, 164 (Tex.App.—Eastland 1993, writ denied) (holding appellate court, by virtue of rule 19(d), can consider materials not in the record that are filed in support of a motion to dismiss). It is axiomatic that an appellate court has to determine its own jurisdiction, *see Welch v. McDougal,* 876 S.W.2d 218, 220 (Tex.App.—Amarillo 1994, writ denied), and rule 19(d) enhances an appellate court's ability to fulfill that obligation. Since this court *is* authorized to consider affidavits to determine our jurisdiction, we may consider Mellon's affidavits. *Willard v. Davis,* 881 S.W.2d 907, 910 (Tex.App.—Fort Worth 1994, orig. proceeding); *Jones v. Griege,* 803 S.W.2d 486, 488 (Tex.App.—Dallas 1991, no writ); *Eubanks,* 578 S.W.2d at 516; TEX.GOV'T CODE ANN. § 22.220(c) (Vernon 1988).

Even if we ignored the affidavits, Touche Ross has not contested the facts presented in Mellon's brief concerning the site of the summary judgment hearing. We are, therefore, permitted to take Mellon's statements as true. *See* TEX.R.APP.P. 75(f). In any case, counsel for Touche Ross admitted during oral argument that the summary judgment hearing took place in Galveston County.

## FACTUAL & PROCEDURAL BACKGROUND

The events leading up to, including, and after the summary judgment hearing are uncontested. On or about August 21, 1995, a visiting judge was appointed to preside over the 333rd Judicial District Court of Harris County, Texas to hear pre-trial and trial proceedings in *Freeman, et al. v. Granada, et al.* This consolidated suit included the following cases: (1) *Edward Bass v. Granada Corporation, et al.;* (2) *Jeffrey Love, et al. v. Granada Corporation, et al.;* (3) *Mellon Service Company v. Biospectrum, Inc., et al.;*

---

**1.** In the case of an appeal, jurisdiction involves the power or authority of an appellate court to decide an appeal. *Johnson v. State,* 747 S.W.2d 568, 569 (Tex.App.—Houston [14th Dist.] 1988,

no writ). Without this authority any judgment entered by an appellate court is void and of no effect. *Id.*

and (4) *Rod E. Gorman v. Granada Corporation, et al.*

On September 14, 1995, the judge conducted a hearing on four motions for partial summary judgment filed by appellee, Touche Ross, and one cross-motion for summary judgment filed by Mellon. With the agreement of the parties, the judge conducted oral argument on the motions for partial summary judgment in the 122nd Judicial District Court in Galveston County, where he was sitting as visiting judge, even though the case was pending in the 333rd Judicial District Court of Harris County.[2] At that hearing, the judge also granted Touche Ross' motion for leave to file the affidavit of Thomas Easley.

On September 28, 1995, apparently while in Harris County, the judge granted three of Touche Ross' four motions for partial summary judgment and denied Mellon's cross-motion. On September 29, 1995, the judge severed the case styled *Mellon Service Company, et al. v. Touche Ross & Co., et al.*, and on September 30, 1995, signed a final, appealable judgment. Mellon perfected an appeal from this judgment, filed briefs complaining of the trial court's order granting three of Touche Ross' motions for partial summary judgment, and filed a motion to vacate the trial court's judgment and dismiss the appeal for want of jurisdiction.

█ Mellon's motion to vacate argues that the visiting trial judge violated article V, section 7 of the Texas Constitution by conducting the summary judgment hearing in Galveston County on a suit pending in Harris County. Contending the judgment is void, Mellon urges us to dismiss this appeal for want of jurisdiction. Touche Ross counters that (1) oral argument is not a prerequisite to granting summary judgment, and therefore,

the site of oral argument has no bearing on the trial court's jurisdiction; and (2) summary judgment is not an "adjudication of rights." Consequently, Touche Ross concludes that the site of oral argument has no bearing on the trial court's jurisdiction. Touche Ross apparently maintains the term "proceedings," as used in article V, section 7, is limited to proceedings that conclusively adjudicate rights.

## ARTICLE V, SECTION 7 AND ITS PROGENY

Article V, section 7 governs judicial districts and district judges and their terms, absence, disability or disqualification, as well as where a district court shall hold its proceedings.

The Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law.

\*　　\*　　\*　　\*　　\*　　\*

TEX. CONST. art. V, § 7.

█ A district court has no power to adjudicate the rights of litigants except at the time and places prescribed by law. *Howell v. Mauzy*, 899 S.W.2d 690, 699 (Tex. App.—Austin 1994, writ denied) (citing *Lyons–Thomas Hardware Co. v. Perry Stove Mfg. Co.*, 88 Tex. 468, 27 S.W. 100, 109 (1894); *Ex parte Lowery*, 518 S.W.2d 897, 900 (Tex.Civ.App.—Beaumont 1975, orig. proceeding)). In Texas, that law is article V, section 7 of the Texas Constitution and statutes enacted after article V, section 7. Neither party contends that any other statute controls this case and we are of the opinion that none applies.[3] Article V, section 7 clearly requires district courts to conduct proceedings at the county seat of the county in

---

2. At oral argument, Touche Ross' counsel stated that the visiting judge called the parties and asked them if they would agree to come to Galveston County for the summary judgment hearing.

3. The phrase "except as otherwise provided by law" in article V, section 7 was added by the legislature through a constitutional amendment in 1949 "to permit greater flexibility in cases pending in districts embracing two or more counties." *Mauzy*, 899 S.W.2d 690, 699 (Tex.

App.—Austin 1994, writ denied) (citing TEX. CONST. art. V, § 7, interp. commentary (Vernon 1993)). The judge heard the case in the 122nd Judicial District Court, which is composed solely of Galveston County, see TEX.GOV'T CODE ANN. § 24.224(a) (Vernon 1988), and the case was pending in the 333rd Judicial District Court, which is composed of Harris County only, see TEX.GOV'T CODE ANN. § 24.479(a) (Vernon 1988), so the phrase does not apply to this case.

which the case is pending. TEX. CONST. art. V, § 7. The "county seat" has been held to be the place where the county courthouse is located, and a district court has no jurisdiction to conduct proceedings elsewhere. *Bridgman v. Moore*, 143 Tex. 250, 183 S.W.2d 705, 708 (1944); *Mauzy*, 899 S.W.2d at 699 n. 15. If a district court sat outside its jurisdictional geographic area, its proceedings would be fundamentally defective and any order based on those proceedings would be void. *See Mauzy*, 899 S.W.2d at 699. This defect in jurisdiction cannot be cured by the consent or agreement of the parties. *Stine v. State*, 908 S.W.2d 429, 431 (Tex. Crim.App.1995); *Mauzy*, 899 S.W.2d at 699.

For example, in *Howell v. Mauzy*, the judge for the 202nd Judicial District Court of Bowie County, Texas, was appointed to preside over a suit pending in a Dallas County district court. *Id.* at 698 n. 13. With the parties' agreement, the judge convened a hearing in Bowie County on the defendant's plea in abatement and motion to transfer venue. He "subsequently" ordered the suit abated, and transferred the case to Travis County.[4] *Id.* at 698–699. The Austin Court of Appeals agreed with appellant's argument that the trial judge violated article V, section 7 by holding the hearing outside Dallas County, and held the trial judge's orders on the plea in abatement and motion to transfer venue were void. *Id.* at 700. Clearly then, if a court is without jurisdiction to act, the parties' agreement to allow it to take action in their case does not cloak the court with authority it does not otherwise have.

## THE NECESSITY OF ORAL ARGUMENT

In spite of the constitution's proscription against conducting proceedings outside the county in which a case is pending, Touche Ross argues the trial court's actions in Galveston did not deprive it, or this court, of jurisdiction. Pointing out that oral argument is not an essential proceeding since summary judgment must be decided on the documents filed by the parties and not on oral argu-

ment, Touche Ross claims the hearing had no impact on the trial court's jurisdiction to enter a judgment on their summary judgment motion.

■ It is true that a trial court need not allow oral argument as a prerequisite to granting summary judgment. *See Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677 (Tex.App.—Houston [14th Dist.] 1993), *writ denied per curiam*, 864 S.W.2d 491 (Tex. 1993), *cert. denied*, 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994). Nonetheless, the trial judge *did* hold oral argument before granting the summary judgment, and the arguments apparently had some impact on him. The order granting partial summary judgment recited three times that the trial court considered "any argument of the parties." Consequently, whether or not the trial court was *required* to hold a hearing, it did so. In considering the parties' oral arguments in determining the merits of the parties' claims, the trial court made oral argument an important part of the whole summary judgment process.

Even if oral argument had not had an impact on the entry of the summary judgment, our conclusion would not change. *Mauzy* also involved a "non-essential" hearing held outside the county in which the case was pending. At a venue hearing, just as in a summary judgment hearing, no live testimony is allowed. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 15.064(a) (Vernon 1986). Oral argument is merely persuasive and has no legal or evidentiary significance. *Mauzy*, 899 S.W.2d at 700; TEX.CIV.PRAC. & REM. CODE ANN. § 15.064(a) (Vernon 1986). A trial court must rule on a motion to transfer venue based on the same type of evidence it is limited to in making its decision on a summary judgment, the pleadings, affidavits, and evidence on file. *See id.;* TEX.R.CIV.P. 166a(c). The *Mauzy* court found the order transferring venue to be void, *even though*, unlike here, the trial court did not appear to

---

4. The opinion is unclear on whether the trial court actually ruled on the motions in Bowie County, or whether it ruled on them in Dallas County. *See Mauzy*, 899 S.W.2d at 699 (stating that the trial court "subsequently ordered the Dallas suit abated and transferred to Travis County").

rely on or consider oral argument.[5] Consequently, we find that the importance or necessity of oral argument does not impact the validity of the judgment in this case. Instead, the judgment's validity turns on our interpretation of the word "proceeding" as used in article V, section 7. *See Mauzy*, 899 S.W.2d at 700.

## THE MEANING OF "PROCEEDING"

■ Touche Ross argues that the word "proceeding" in article V, section 7 means "proceedings in which parties' rights are litigated." Setting forth the contention that a summary judgment hearing is not an "adjudication of rights," Touch Ross maintains that the location of the summary judgment hearing was irrelevant to the court's jurisdiction. It contends that a court loses its authority to act only when it "adjudicates litigants' rights," that is, receives evidence or enters judgment, somewhere other than the county seat of the county in which the case is pending. According to Touche Ross, the court below *did* adjudicate the parties' rights at the county seat in Harris County because the pleadings, motions for summary judgment, and attached evidence were filed in Harris County with the district clerk and the judgment was signed in Harris County. This argument requires us to interpret what the statute means by the word "proceedings," and particularly, whether it was intended to have the narrow, limited definition Touche Ross advocates.

The standards by which we interpret our constitution are plain:

> The Texas Constitution derives its force from the people of Texas. This is the fundamental law under which the people of this state have consented to be governed. In construing [its] language ... we consider "the intent of the people who adopted it." In determining that intent, "the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accom-

plished, are proper subjects of inquiry." *However, because of the difficulties inherent in determining the intent of voters over a century ago, we rely heavily on the literal text.* We seek its meaning with the understanding that the Constitution was ratified to function as an organic document to govern society and institutions as they evolve through time.

*Dawkins v. Meyer*, 825 S.W.2d 444, 447–48 (Tex.1992) (quoting *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex. 1989)) (emphasis added).

■ In interpreting statutes or constitutional provisions, courts must concentrate on the literal text of the black letter law to ascertain its meaning. *See Stine*, 908 S.W.2d at 431. It is only when the literal text is unclear or would lead to absurd results that the courts utilize additional means to reach the law's intent. *Id.* As the Texas Supreme Court recently observed, "When interpreting our state Constitution, we rely heavily on its literal texts, and are to give effect to its plain language." *The Republican Party of Texas v. Dietz*, 940 S.W.2d 86 (1997). State courts cannot question or vary from constitutional mandates. *Crowder v. Benchmark Bank*, 889 S.W.2d 525, 528 (Tex.App.—Dallas 1994), *aff'd in part and rev'd in part on other grounds*, 919 S.W.2d 657 (Tex.1996). Neither judges nor courts are free to question the wisdom of our constitution, but must give full effect to its plain language. *Dawkins*, 825 S.W.2d at 448 (citing *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 154 (1942)). Those who are called upon to construe the constitution are not authorized to thwart the will of the people by reading into the constitution language not contained therein, or by construing it differently from its plain meaning. *Cramer*, 167 S.W.2d at 154. The people have the sole power to change or modify the plain language adopted by them. *Id.*

Turning to the issue of whether the term "proceedings" encompasses oral argument in

---

5. The trial court in this case did *more* than hear oral argument at the summary judgment hearing. The trial court orally granted appellee's motion to file the affidavit of Thomas Easley. This ruling had an impact on the trial court's decision to grant at least one of appellee's motions for partial summary judgment, for in its judgment, the trial court specifically stated that it relied on the affidavit of Thomas Easley.

summary judgment cases, we will first consider the text of article V, section 7. The pertinent portion of section 7 consists of only one short sentence: "The Court shall conduct its proceedings at the county seat of the county in which the case is pending ..." The word "proceeding" is not modified by any qualifying or restricting words or phrases. The text is brief, uncomplicated, and "clear and unambiguous." The Court of Criminal Appeals reached this same conclusion when it looked at section 7. *See Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App.1995).

The word at issue, "proceeding," is a very broad term. Webster's Dictionary defines it as "a particular step or series of steps adopted for doing or accomplishing something," and gives as an example the following: "studied each [*proceeding* ] necessary for bringing the case to a successful conclusion." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1807 (1993). The definition in Black's Law Dictionary is similarly broad.

> In a general sense, the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, *including all possible steps in an action from its commencement to the execution of judgment. ... The proceedings of a suit embrace* **all** *matters that occur in its progress judicially.... Term "proceeding" may refer not only to a complete remedy but also to a mere procedural step that is part of a larger action or special proceeding.*

BLACK'S LAW DICTIONARY 1204 (6th ed. 1990) (emphasis in the original in bold and emphasis added in italics). The plain language of the statute would clearly include a summary judgment hearing.

If the framers of the constitution intended to draft an article which advanced Touche Ross' position, they would not have employed a word with such broad connotation. When the word "proceeding" appears elsewhere in the constitution it is qualified, modified, or otherwise limited. For example, another section of article V of the Texas Constitution,

uses the phrase "adjudicatory proceedings" rather than the broader term, "proceedings." *See* TEX. CONST. art. V, § 1–a(11) (Vernon 1993). Because the framers did not limit article V, section 7, we must assume that the word choice is consonant with the law's intended purpose. If article V, section 7 was intended to be limited to only those occasions when evidence was being received or only when a judgment was entered in a case, then the use of such an expansive term would contradict such a limited intent. The framers chose not to use the phrase "adjudicatory proceedings" or limit the article by stating that "the Court shall 'adjudicate rights' at the county seat of the county in which the case is pending." Based on a plain reading of the text, we are persuaded that the framers of the constitution did not intend to limit the term "proceeding," and, therefore, conclude the word "proceeding" in article V, section 7 includes summary judgment hearings. If the trial court is to conduct a hearing on the parties' motions for summary judgment, it must hold that hearing at the county seat of the county in which the case was pending before it enters a valid summary judgment.

Our conclusion, mandated by the plain language of article V, section 7, also is historically sound and does not lead to absurd results. The traditional requirement that a court should exercise its judicial functions at a fixed location dates back to the time of the Magna Carta. TEX. CONST. art. V, § 7, interp. commentary (Vernon 1993). While one commentator has noted that requiring district courts to sit at the county seat of the county in which the case is pending is a "source of some rigidity," [6] the requirement is not unreasonable, promotes certainty and stability, and ensures equal treatment for all parties.

In addition, although no court has determined the definition of the word "proceeding," other courts have considered the general issue, and our interpretation of section 7 is consonant with other case law addressing the

---

6.   1 GEORGE D. BRADEN, ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALY-  SIS 406 (George D. Braden, primary author and ed., 1977).

section.[7] For over 100 years, Texas courts have taken the language of article V, section 7 literally and required absolute compliance. In 1896, the Texas Supreme Court considered whether the legislature could pass an act creating, what was in essence, a district court (though it was not called a district court) in Texarkana, not the county seat of Bowie County, but the largest city in the county. *Whitner v. Belknap,* 89 Tex. 273, 34 S.W. 594 (1896). Referring to article V, section 7, the supreme court concluded that such a court was contrary to the constitution, because the section required a district judge to "hold the regular terms of his court at the county seat of each county in his district."

It follows by necessary implication that he [the trial judge] cannot hold a regular term of his court at any other place than the county seat of the county and the legislature had no power to authorize or require a district judge to do that which the Constitution forbade him to do. *Id.* 34 S.W. at 596.

In 1924, the supreme court revisited the issue in *Turner v. Tucker,* 113 Tex. 434, 258 S.W. 149. Once again, the Texas Supreme Court held that a district court must sit only at the county seat of the county. *Id.* 258 S.W. at 150–151. In *Isbill v. Stovall,* the parties, who were involved in a suit in Jones County, agreed to let the judge of Jones County try their case without a jury in Taylor County while he was on vacation. 92 S.W.2d 1067, 1069 (1936). The Eastland Court of Appeals held that the court's actions and the judgment were void because they violated the clear mandate of article V, section 7. *Id.* at 1070–72. *See also Howell v. Mauzy,* 899 S.W.2d 690, 699–700 (Tex.App.—

Austin 1994, writ denied); *Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App.1995). None of these cases even so much as hinted that a court could take any action in a case outside the county seat at which the court was located.

We have found and have been cited to only one case which did not require total compliance with article V, section 7. In the unusual case of *Bridgman v. Moore,* the Texas Supreme Court found substantial compliance with article V, section 7, and upheld a judgment signed at the judge's *home* in the county seat of the county where the case was pending. 143 Tex. 250, 183 S.W.2d 705 (1944). In discussing its refusal to void the judgment, the court emphasized two factors. First, the attack on the judgment was a *collateral* attack and not a direct appeal as in this case and the other cases just cited. *Id.* 183 S.W.2d at 708. Second, every other aspect of the case and its trial was proper. *Id.* The trial, held at the courthouse, was open to public scrutiny, the jury rendered its verdict at the courthouse, and the parties had discussed the form of the judgment presented to the judge before presenting it to him. *Id.* Only the presentation and signing of the judgment at the judge's home was irregular. *Id.* After having considered these factors, the supreme court concluded that the judge had substantially complied with article V, section 7. *Id.*

Unlike the *Bridgman* court, the trial court in this case *did not* substantially comply with article V, section 7. The hearing that disposed of the suit in the summary judgment proceeding was held, not only *outside the county seat,* but *outside the county* in which

7. Other courts interpreting the term "proceeding" in the context of other statutes and rules have also concluded that it requires a broad interpretation. *See American Maintenance & Rentals, Inc. v. Estrada,* 896 S.W.2d 212 218 (Tex.App.—Houston [1st Dist.] 1995, vacated pursuant to settlement) (holding that phrase "other proceeding" as used in rule 801(e)(1)(A) of the Texas Rules of Civil Evidence denoted steps and events in the process of litigation besides a trial or hearing because of the word "other" before the word "proceeding"); *Southwestern Elec. Power Co. v. Martin,* 844 S.W.2d 229, 232 (Tex.App.—Texarkana 1992, writ denied) (holding that filing of request for lump sum

settlement constituted institution of a proceeding under the Texas Workman's Compensation Act).

In *Tigner v. State,* 928 S.W.2d 540, 543 (Tex. Crim.App.1996), the court had to decide whether the term "proceeding" as used in article 38.22 § 3(a)(5) of the Code of Criminal Procedure encompassed voir dire. This article requires that a defendant's attorney be given a copy of all recordings of the defendant made under the article not later than the 20th day before the date of *the proceeding.* Tex.Code Crim.Proc.Ann. art. 38.22 § 3(a)(5) (Vernon Supp.1997) (emphasis added). The court ultimately adopted a broad interpretation of the term "proceeding" and found it did encompass voir dire. *Id.* at 546.

the case was pending. We see too many differences between this case and *Bridgman* to even *consider* applying any exception *Bridgman might* create.[8]

Accordingly, we conclude that the trial court violated article V, section 7 by holding the summary judgment hearing at a place other than the county seat of the county in which the case was pending. The trial court's order is void, and we must dismiss this appeal for want of jurisdiction. *See Eubanks,* 578 S.W.2d at 517. The judgment of the trial court is set aside and the appeal is dismissed.

**8.** The case law *Bridgman* relies on involved other relatively minor infractions of either section 7 or a statute relating to the drawing of a jury. In each case the event in question occurred in the appropriate county, but not the appropriate building or the correct room in the appropriate building. *Id.*